Gerald Singleton (SBN 208783)
Brody A. McBride (SBN 270852)
Trenton G. Lamere (SBN 272760)
SINGLETON SCHREIBER
McKENZIE & SCOTT LLP
450 A Street, 5th Floor
San Diego, CA 92101
P: (619) 771-3473
F: (619) 255-1515
gsingleton@ssmsjustice.com
bmcbride@ssmsjustice.com
tlamere@ssmsjustice.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE HORTON, | Case No. '21CV400 H   BGS |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | **JURY TRIAL DEMANDED** |
| COUNTY OF SAN DIEGO, EVAN SOBCZAK, JACOB MACLEOD, UNKNOWN SAN DIEGO SHERIFF'S DEPARTMENT PERSONNEL, CITY OF LA MESA, UNKNOWN LA MESA POLICE DEPARTMENT PERSONNEL, | |
| Defendants. | |

## INTRODUCTION

1. On May 30, 2020, Plaintiff Michelle Horton ("Horton") was shot in the breast with a less-lethal projectile in a drive-by shooting by law-enforcement officers. When shot, Horton was standing on the sidewalk, near a well-lit gas station, on the corner of Spring Street and University Avenue in La Mesa, waiting to meet her children.

2. Horton's children had decided to join the mass protests calling for police reform following the murder of George Floyd by police in Minnesota. After participating

peacefully, Horton and her children planned to meet up, so they could go home.

3. Out of the blue, law-enforcement officers, believed to include Defendants Evan Sobzcak and Jacob MacLeod, drove by Horton in their marked SUV and fired a less-lethal projectile at Horton, possibly a 40-millimeter rubber bullet. The bullet struck Horton's breast, causing serious physical injury, pain and suffering, and humiliation, among other damages.

4. When shot, Horton was not engaged in any criminal, raucous, or destructive behavior; nor was she near anyone engaged in such behavior. She was waiting quietly for her children.

5. Horton now sues for recovery of damages pursuant to 42 U.S.C. § 1983 and various state laws.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, as Plaintiff asserts causes of action arising under 42 U.S.C. § 1983 and state-law claims supplemental to the § 1983 claims.

7. The Court has personal jurisdiction over Defendants in this action, as each of Defendants were domiciled, or were engaged in routine administration/business, in the State of California at the time of the events giving rise to this action. *See* Fed. R. Civ. P. 4(k)(1)(A); Cal. Code Civ. P. § 410.10; *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).

8. Plaintiff has complied with all California Government Claims Act requirements for asserting state-law causes of action against Defendants, including the presentation of a claim for damages to the City and the County, which the City rejected on September 9, 2020, and the County rejected on November 16, 2020. *See* Cal. Gov't Code §§ 900 et seq.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, as the events giving rise to this action occurred in the City of San Diego, California, which is located within the Southern District of California.

/ / /

# PARTIES

10. Plaintiff Michelle Horton ("Horton" or "Plaintiff") is an individual who, at all times relevant hereto, was domiciled in San Diego County, California.

11. Defendant County of San Diego ("County") is a municipal entity duly organized under California law. The San Diego Sheriff's Department ("Department") is the County's primary law-enforcement agency. William Gore ("Gore") is and was, at all times relevant to this complaint, San Diego County Sheriff and, as such, a final policymaker for the Department and for the County on matters relating to the Department's and the County's law-enforcement officers. Gore was, at all times relevant to this complaint, among those responsible for the policies, procedures, practices, and customs of the County's law-enforcement officers, including the hiring, training, supervision, discipline, actions, and inactions of the County's law-enforcement officers, agents, and/or employees.

12. Plaintiff is informed and believes that Defendants Evan Sobczak ("Sobczak") and Jacob MacLeod ("MacLeod") are each individuals who, at all times relevant hereto, were County employees engaged in the course and scope of their employment as Department Deputies, and acting under color of state law.

13. There may be additional County deputies, supervisors, and/or policymakers liable for Plaintiff's damages. The County, however, has exclusive control over such information. Plaintiff therefore sues these individuals as Unknown San Diego Sheriff's Department Personnel.

14. Defendant City of La Mesa ("City") is a municipal entity duly organized under California law. The La Mesa Police Department ("LMPD") is the City's primary law-enforcement agency. Walter Vasquez ("Vasquez") and Matt Nicholass ("Nicholass") were and are, at all times relevant to this complaint, chief or acting chief of LMPD and, as such, final policymakers for LMPD and for the City on matters relating to LMPD's and the City's law-enforcement officers. Vasquez and Nicholass were and are, at all times relevant to this complaint, among those responsible for the policies, procedures, practices,

and customs of the City's law-enforcement officers, including the hiring, training, supervision, discipline, actions, and inactions of the City's law-enforcement officers, agents, and/or employees.

15. There may be additional LMPD officers, supervisors, and/or policymakers liable for Plaintiff's damages. The City, however, has exclusive control over such information. Plaintiff therefore sues these individuals as Unknown La Mesa Police Department Personnel.

16. At all times relevant to this action, each defendant was an employee and/or agent of each and every other defendant, acting within the course and scope of this employment and/or agency. Each defendant was, moreover, at all times relevant to this action, acting with the consent, permission, and authorization of each and every other defendant. Each defendant, moreover, ratified and approved each of the actions/inactions by every other defendant, which actions/inactions are alleged herein.

## FACTS

17. On May 30, 2020, law enforcement officers, believed to include Defendants Sobczak and MacLeod, shot Horton in the breast with a less-lethal projectile while driving past Horton. When shot, Horton was standing on the sidewalk, near a well-lit gas station, at the corner of Spring Street and University Avenue in La Mesa. She was waiting for her children.

18. Horton's children had been peacefully participating in the mass protests spurred by George Floyd's murder by police in Minnesota, and Horton was waiting to meet up with her children so they could go home. Horton was there to support her children's responsible exercise of their First Amendment rights and, indeed, her children had participated responsibly in the demonstrations.

19. When shot, Horton was unarmed; not engaged in any criminal, raucous, or destructive activity; did not pose any threat of harm to anyone; and was not resisting or fleeing arrest. She was not, in fact, being detained or arrested by officers at all. She was not immersed in a crowd of unruly protestors, nor was she near anyone engaged in

criminal, raucous, or destructive activity. There was, in short, no reason for any officer to use any force on Horton, much less fire a less-lethal projectile at Horton's center mass.

20. Horton is informed and believes the City, through currently unknown LMPD personnel and the City's final policymakers, authorized the presence of County/Department personnel within City limits, including the authorization to use force, including the force used on Horton. Whether this was through an intentional campaign by the City of using less-lethal force for "crowd control" purposes, or through deliberate indifference to the fact that County/Department personnel were engaged in such use of force, Plaintiff is informed and believes that City and LMPD policymakers and supervisors authorized, acquiesced to, and ratified the use of force on Horton.

21. This use of excessive force on Horton was consistent with, and a result of, a deliberate indifference to the training needs of LMPD and County personnel, as well as a practice/custom among LMPD and County personnel of using excessive force on peaceful protestors (i.e., individuals not suspected of committing a serious crime, not posing an immediate threat of harm to officers or others, and not resisting/fleeing arrest) in violation of demonstrators' First, Fourth, and Fourteenth Amendments.

22. Use of less-lethal force for mere "crowd control" purposes, regardless of whether protestors' individual actions justify such use of force, results in routine constitutional violations. This chills First Amendment rights by discouraging the public from engaging in any public protests/demonstrations. This constitutes excessive force under the Fourth Amendment. And this violates substantive due process, because the use of less-lethal force on peaceful protestors "shocks the conscience."

23. There are numerous examples of peaceful protestors being injured by less-lethal force, including projectiles (e.g., beanbag shotgun rounds), chemical weapons (e.g., OC grenades), and impact devices (e.g., batons). Horton is just one example.

24. An LMPD officer, for example, shot Leslie Furcron in the forehead with a beanbag shotgun, permanently injuring her. After the incident, the City and LMPD claimed the use of force was justified because it looked like Furcron, a grandmother, was

throwing a bottle in the direction of County/Department Deputies—who were situated *across a large parking lot*.

25. The use of less-lethal force is only reasonable where someone is suspected of committing a serious crime, poses an immediate threat of harm to themselves or others, and/or who is resisting/fleeing arrest—not throwing a bottle that has no chance of reaching, much less injuring, a group of armored law-enforcement officers.

26. The U.S. Circuit Court for the Ninth Circuit has, in fact, held it is unreasonable to use pepper spray, projectile bean bags, and pepper ball projectiles against individuals "who were suspected of only minor criminal activity, offered only passive resistance, and posed little to no threat of harm to others." *Nelson v. City of Davis*, 685 F.3d 867, 885 (9th Cir. 2012). More recently, and directly on point, the U.S. District Court for the Western District of Washington concluded:

> [Seattle Police Department]'s use of less lethal, crowd control weapons have surely chilled speech. To start, exposure to tear gas and pepper spray is "excruciating." . . . ("Imagine the hottest chile pepper you ever ate, then imagine an even hotter one that you would never eat, and then imagine touching that pepper and inadvertently sticking your finger in your eye. That is what a small dose of pepper spray is like."). The same is true for the projectiles that SPD fires into crowds, which can cause intense pain and bruising. . . . Though "less lethal," these devices have been sufficiently lethal to deter some protestors from protesting again. . . . The Court holds that SPD's use of these weapons would chill a person of "ordinary firmness" from protesting.

*Black Lives Matter Seattle-King Cnty. v. City of Seattle, Seattle Police Dep't*, No. 2:20-CV-00887-RAJ, 2020 WL 3128299, at *3 (W.D. Wash. June 12, 2020).

27. As an actual and proximate result of the foregoing actions and omissions by Defendants, Horton suffered general and specific damages, including medical expenses, physical pain, mental suffering, disfigurement, inconvenience, anxiety, humiliation, and emotional distress.

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 – Excessive Force
### (Against Sobczak, MacLeod, Unknown County Personnel, Unknown LMPD Personnel)

28. The foregoing paragraphs are incorporated herein by this reference.

29. In using force on Horton on May 30, 2020, the individual defendants acted under color of state law.

30. The use of force these defendants used on Horton—including firing a less-lethal projectile at Horton's center mass—was excessive under the circumstances and, therefore, a violation of Fourth Amendment right to be free from unreasonable seizures.

31. As a direct and foreseeable result of these defendants' use of excessive force, Horton suffered general and specific damages, including medical expenses, physical pain, mental suffering, disfigurement, inconvenience, anxiety, humiliation, and emotional distress. Horton thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

32. Because these defendants used force against Horton in reckless disregard of Horton's Fourth Amendment rights, punitive damages should be assessed against these defendants in an amount that will both punish their conduct and deter such conduct in the future.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 – *Monell*
### (Against County and City)

33. The foregoing paragraphs are incorporated by this reference.

34. In using force on Horton on May 30, 2020, the individual defendants acted under color of state law.

35. The use of force used on Horton—including firing a less-lethal projective at Horton's center mass—was excessive under the circumstances and, therefore, a violation of the Fourth Amendment right to be free from unreasonable seizures. To the extent such use of force was for mere "crowd control" purposes, this use of force also violated the First Amendment right to speech and to seek redress of government grievances, in that such use of force was retaliation for Horton's exercising First Amendment rights and/or was used in reckless disregard of these rights. Such use of force, for mere "crowd control"

purposes, in other words, unreasonably chills First Amendment rights. It also "shocks the conscience" in violation of substantive due process rights under the Fourteenth Amendment.

36. The City and County are liable for this deprivation of Plaintiff's constitutional rights pursuant to the Supreme Court's holding in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), and its progeny, which provide that a local governing body may be held liable for violations of constitutional rights committed by the entity's employees if the violations arose from, among other things: (a) an official policy or settled practice/custom among the entity's employees; and/or (b) deliberate indifference to training and supervision policies that are inadequate to prevent violations of law by the entity's employees.

37. More specifically, the City and County are liable under *Monell* because the deprivation of Horton's First, Fourth, and Fourteenth Amendment rights was substantially caused by a practice/custom of City and County law-enforcement officers using less-lethal force (including projectile, chemical, and impact devices) for mere crowd control purposes, regardless of whether protestors' individual actions justify such use of force, results in routine constitutional violations.

38. It is, moreover, apparent that law-enforcement officers authorized to operate, and operating, in La Mesa on the day of this incident lacked the necessary training and supervision needed to protect constitutional guarantees. That is, the violation of Horton's First, Fourth, and Fourteenth Amendment rights was substantially caused by the City's and the County's deliberate indifference to the training and supervision needs of its law-enforcement officers with regard to performing their duties within the bounds of the First, Fourth, and Fourteenth Amendments. The City and County have failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline their law-enforcement officers in deliberate indifference to Horton's, and other individuals', constitutional rights.

39. The foregoing practice/custom, along with the City's and County's deliberate

indifference to this lack of training and supervision, were each moving forces behind the violations of Plaintiff's constitutional rights under the Fourth Amendment.

40. As a direct and foreseeable result of this practice or custom, and of the City's and County's deliberate indifference to the lack of training and supervision of their officers, Horton suffered general and specific damages, including medical expenses, physical pain, mental suffering, disfigurement, inconvenience, anxiety, humiliation, and emotional distress. Horton thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## Cal. Civ. Code § 52.1(b) – Bane Act
### (Against Sobczak, MacLeod, Unknown County Personnel, Unknown LMPD Personnel, County, City)

41. The foregoing paragraphs are incorporated herein by this reference.

42. On May 30, 2020, the individual defendants interfered, through intentional physical intimidation and coercion (e.g., shooting at Plaintiff's center mass with a less-lethal projectile), with Horton's Fourth Amendment right to be free from the use of excessive force.

43. These defendants intentionally subjected Horton (and/or recklessly disregarded Horton's constitutional rights by subjecting her) to a serious use of force with zero justification for the use of *any* force. Eyewitness accounts and surveillance footage, among other evidence, clearly demonstrate the deliberate, reckless, and unjustified nature of these defendants' actions.

44. As a direct and foreseeable result of these officers' actions against Horton, Horton suffered general and specific damages, including medical expenses, physical pain, mental suffering, disfigurement, inconvenience, anxiety, humiliation, and emotional distress. Horton thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

45. Moreover, because these defendants were acting in the course and scope of

their employment as law-enforcement officers when the foregoing conduct occurred, the City and/or County are vicariously liable for the injuries Horton suffered as a result of these officers' tortious conduct.  *See* Cal. Gov't Code § 815.2.

## FOURTH CAUSE OF ACTION

### Battery

**(Against Sobczak, MacLeod, Unknown County Personnel, Unknown LMPD Personnel, County, City)**

46. The foregoing paragraphs are incorporated herein by this reference.

47. On May 30, 2020, the individual defendants intentionally touched Plaintiff and engaged in actions which caused Plaintiff to be touched.

48. These defendants used force that was, under all relevant circumstances, unreasonable.

49. At no point on May 30, 2020, did Horton consent to any use of force by any defendant.

50. As a direct and foreseeable result of these defendants' harmful and offensive contacts with Horton's person, Horton suffered general and specific damages, including medical expenses, physical pain, mental suffering, disfigurement, inconvenience, anxiety, humiliation, and emotional distress.  Horton thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

51. Moreover, because these defendants were acting in the course and scope of their employment as law-enforcement officers when the foregoing conduct occurred, the City and/or County are vicariously liable for the injuries Horton suffered as a result of these officers' tortious conduct.  *See* Cal. Gov't Code § 815.2.

## FIFTH CAUSE OF ACTION

### Negligence

**(Against Sobczak, MacLeod, Unknown County Personnel, Unknown LMPD Personnel, County, City)**

52. The foregoing paragraphs are incorporated herein by this reference.

53. At the time of the incident giving rise to this action, the individual defendants had a duty to perform their law-enforcement duties as would a reasonable officer in the same situation, including a duty to be reasonable in making pre-contact tactical decisions and plans, using force, and intervening in other officers' use of unreasonable force.

54. These defendants breached the foregoing duties on May 30, 2020, when, without a reasonable pre-contact tactical plan, used excessive force on Horton when, in fact, zero force was justified.

55. As a direct and foreseeable result of these defendants' respective breaches of duty, Horton suffered general and specific damages, including medical expenses, physical pain, mental suffering, disfigurement, inconvenience, anxiety, humiliation, and emotional distress. Horton thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

56. Moreover, because these defendants were acting in the course and scope of their employment as law-enforcement officers when the foregoing conduct occurred, the City and/or County are vicariously liable for the injuries Horton suffered as a result of these officers' tortious conduct. *See* Cal. Gov't Code § 815.2.

## PRAYER FOR RELIEF

57. Based on the foregoing facts and causes of action, Plaintiff seeks the following relief:

   a. judgment in favor of Plaintiff and against Defendants on all causes of action asserted herein;

   b. as to all causes of action, compensatory damages (including economic and non-economic damages), in amounts to be determined at trial;

   c. as to the § 1983 claim asserted against individual defendants, punitive damages, against the individual defendants only, in an amount sufficient to punish the conduct giving rise to this action and to deter such conduct in the future;

   d. as to the Bane Act claim, triple the amount of Plaintiff's actual damages

or minimum statutory damages, whichever is greater;

e. reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988, California Government Code section 52.1(h), California Code of Civil Procedure section 1021.5, and all other relevant statutory and case law; and

f. any and all other relief in law or equity to which Plaintiff may be entitled and which this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands, under the Seventh Amendment, a trial by jury as to each and every cause of action asserted herein.

Dated: March 5, 2021                SINGLETON SCHREIBER
                                    McKENZIE & SCOTT LLP


                                    By:   */s/Trenton G. Lamere*
                                          Trenton G. Lamere
                                    Attorneys for Plaintiff Michelle Horton